UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

INTERVEST CONSTRUCTION, INC.
a Florida Corporation

    Plaintiff,               CASE NO.:6:05-CV-1853-ORL-18KRS

vs.

CANTERBURY ESTATE HOMES, INC.,
a Florida Corporation,

    Defendant,

_____/

## PRE-TRIAL BRIEF FOR DEFENDANT

Pursuant to the Case Management and Scheduling Order and the Motion for Extension of Time to File Trial Briefs, the Defendant, CANTERBURY ESTATE HOMES, INC. ("CANTERBURY"), hereby submits its Pre-Trial Brief with proposed findings of fact and conclusions of law.

### I.    CASE OVERVIEW

The Plaintiff, INTERVEST CONSTRUCTION, INC. ("INTERVEST"), brought this suit against the Defendant contending that the Defendant has violated the Plaintiff's copyright in certain floor plans of a home, in violation of 17 U.S.C. § 101, *et seq.* The Plaintiff alleges that Canterbury has illegally copied the floor plans of a home called "The Westminster Model 2436." Both parties have motions for summary judgment pending at this time.

## II. ISSUES PRESENTED FOR TRIAL

1. Whether Defendant has infringed on the copyrighted floor plans of the Plaintiff?

2. If so, is Plaintiff's claim barred by laches?

3. If so, whether Plaintiff may recover attorney's fees and costs from Defendant under Chapter 17, United States Code?

## IV. PROPOSED FINDING OF FACTS

Intervest Construction, Inc. (hereinafter "Intervest" or "Plaintiff"), filed this suit against Canterbury Estate Homes, Inc. (hereinafter "Canterbury" or "Defendant") on December 15, 2005. (Compl. pg. 5.) This case arises out of Intervest's claim that it has a valid copyright interest in the floor plans of a home called "The Westminster Model 2436" (hereinafter "Westminster"). (Compl. ¶ 6.) A copy of the Westminster floor plan is attached hereto as "Exhibit A." (Ex. A.) According to Intervest, these plans were created at some time in 1992 and were first published in June of 1994; however, Intervest never registered this copyright until October of 2005. (Compl. ¶¶ 6-8.)[1]

In 2002, Canterbury Estate Homes, Inc. (hereinafter "Canterbury" or "Defendant") designed an original home model called "The Kensington" (hereinafter "Kensington"). (Def. Aff. ¶ 3; Def. Dep. 12-13.) Canterbury built and sold a model of this home between 2002 and 2003. (Def. Aff. ¶ 5.) A copy of the Kensington floor plan is attached hereto as "Exhibit B." (Ex. B.) It is the Kensington model that is the subject of this lawsuit. (Compl. ¶¶ 12-16.) According to Intervest, the Kensington floor plans

---

[1] Intervest claims to have been, at all times, the sole owner and proprietor of the Westminster, but relies only upon its copyright registration certificate of October 2005 and a statement from one of its principals that it owns the copyright. (Compl. ¶ 8; Aff. Charlene B. Irland ¶ 8.)

2

were copied from the Westminster. (Compl. ¶¶ 12-17.) Canterbury strictly denies that it has ever copied anything from Intervest. (Answer ¶ 15.) Canterbury maintains that the Kensington was its own original design created between the company's two principals and their hired engineer, Ray Tajmir of the Architectural Firm of Tajmir-Davis. (Def. Aff. ¶¶ 2-3; Def. Dep. 12-13.) Canterbury further maintains that all of its other homes are built according to the custom orders of their clients and are thus their own original creations. (Def. Dep. 58-59.) Nonetheless, Intervest has been aware of Canterbury's design since 2002 because employees and/or officers of Intervest had visited the building site of the Kensington during its construction. (Def. Aff. ¶ 6.)

## V.   PROPOSED CONCLUSIONS OF LAW

To establish copyright infringement, two elements must be proven: (1) valid ownership; and (2) copying of original elements of the work. Defendant contends that Plaintiff cannot establish a prima facie case of ownership of a valid copyright in the Westminster plans. In addition, even if Plaintiff could establish such ownership, the Plaintiff's proof is legally insufficient to show either copying, or if it could prove copying, that the elements copied are protected under copyright law. Furthermore, even assuming Plaintiff could show a prima facie case of infringement, Plaintiff's failure to assert any claims of infringement for over three years after first learning of Canterbury's design bars Plaintiff's claim by laches. Finally, Plaintiff is not entitled to recover attorney's fees and costs or statutory damages under Chapter 17, United States Code.

### A.  DEFENDANT ASKS THE COURT TO FIND AS A MATTER OF LAW THAT PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF OWNERSHIP OF A VALID COPYRIGHT

The first issue is whether Plaintiff can establish that it is the owner of a valid copyright in the Westminster floor plans. Only the legal or beneficial owner of an exclusive right under a copyright is entitled to maintain an action for infringement of that copyright. *See* 17 U.S.C. § 501(b). Furthermore, the Plaintiff bears the burden of establishing that its copyright is valid. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Defendant asks for the Court to find as a matter of law that Plaintiff has failed to do either in this case.

#### i.  Plaintiff cannot Establish a Prima Facie Case of Copyright Ownership

The issue here is whether plaintiff can establish a prima facie case of copyright ownership such that it has standing to bring this claim against Canterbury. It is elementary copyright law that in order for a plaintiff to make out a prima facie case for infringement, the Plaintiff must prove ownership of a valid copyright or an exclusive right therein. *See World Thrust Films v. Int'l Family Entm't*, 1996 U.S. Dist. LEXIS 16631, 10-11 (S.D. Fla. 1996). If the plaintiff is not the author of the copyright, then the plaintiff must prove his ownership through a chain of title. *See id.* Normally, a prima facie case of ownership is made out by a certificate of registration of a copyright. *See Morley Music Co. v. Cafe Continental, Inc.*, 777 F. Supp. 1579, 1582 (S.D. Fla. 1991). However, the certificate of registration does not constitute prima facie evidence of ownership unless it is made before or within five (5) years after the first publication of the work. *See* 17 U.S.C. § 410(c). The evidentiary weight to be accorded to the

certificate after that time is in the discretion of the court. *See id.*

In the instant matter, the Defendant asks that the court find that Plaintiff has failed to establish a prima facie case that it is the owner of the Westminster design. By Plaintiff's own admission in its complaint, the Westminster was first published in June of 1994, but was not registered until October of 2005 – eleven (11) years and four (4) months after its first publication. Thus, Plaintiff is not entitled to the presumption of ownership afforded by § 410(c).

Furthermore, Defendant asks this Court, in its discretion, to lend no evidentiary weight to the certificate of registration. Long before Plaintiff ever registered their copyright, several home building companies had published floor plans similar to the Westminster. (See Ex. C; Def. Dep. 53.) Plaintiff has stated in its copyright registration that the Westminster was a work-for-hire, but Plaintiff has failed to show who its employee was, or is, and what sources that employee used to come up with the Westminster design.[2]

In defense, Canterbury contends that there were many similar designs to the Westminster and the Kensington on the market before Plaintiff's registration. Thus, it is very possible that Plaintiff's design is a derivative of another protected work. If so, Plaintiff would not be the owner of the Westminster design unless it had the permission of the true owner to make a derivative and it has shown no proof of that either. *See* 17 U.S.C. § 103(a) (copyright does not apply to *any* portion of a derivative work in which

---

[2] The Plaintiff has stated that had the Defendant conducted discovery, it would have learned of Plaintiff's ownership. (See Pl. Opp. Memo 4.) The Defendant's failure to receive discovery is irrelevant. As the Plaintiff is not entitled to a presumption of ownership under the statutes, Plaintiff has the burden of proof to prove ownership to the Court in a non-jury trial as an element of its claim. The Defendant does not have the burden to *disprove* ownership.

material is used unlawfully, so author of infringing derivative has no copyright protection); 17 U.S.C. § 103(b) (copyright in non-infringing derivative work only applies to material contributed by the author of the derivative; material taken from the original work is protected by the original copyright). Therefore, it is far from clear that Plaintiff is even the owner of the Westminster floor plans and Defendant asks this Court to find as a matter of law that Plaintiff has failed to prove a prima facie case of ownership in the Westminster floor plans.

### ii. Plaintiff has Failed to State a Prima Facie Case of Copyright Validity in the Westminster Design

The issue here is whether Plaintiff has a valid copyright. Normally, a prima facie case of copyright validity is made out by a certificate of registration of a copyright. *See Morley Music Co. v. Cafe Continental, Inc.*, 777 F. Supp. 1579, 1582 (S.D. Fla. 1991). However, the certificate of registration does not constitute prima facie evidence of validity unless it is made before or within five (5) years after the first publication of the work. *See* 17 U.S.C. § 410(c). The evidentiary weight to be accorded to the certificate after that time is in the discretion of the court. *See id.* Furthermore, "[a] certificate of registration in a work does not mean that the *entire* work is copyrightable, nor does it purport to identify which aspects of a work are copyrightable; instead, the certificate merely acknowledges that the work contains 'copyrightable subject matter.'" *Gulfstream Aero. Corp. v. Camp Sys. Int'l*, 428 F. Supp. 2d 1369, 1374-75 (S.D. Ga. 2006) (emphasis in original) (citing 17 U.S.C.S. § 410(a)). "'The mere fact that a work is copyrighted does not mean that every element of the work may be protected.'" *Id.* (quoting *Feist Publ'ns v. Rural Tel. Serv.*, 499 U.S. 340, 348 (1991)). In order to have a valid copyright in an item, the item must be an original work of authorship fixed in a tangible medium.

6

*See* 17 U.S.C. § 102(a). In addition, ideas and functional aspects of a work are not protected under copyright law. *See* 17 U.S.C. § 102(b).

    a.    <u>Plaintiff does not have a Valid Copyright because the Aspects of Plaintiff's Design that it Claims were Copied are not Original</u>

The issue here is whether the elements that Plaintiff claims were copied from its floor plans are original works at all. The work must be original *to the author* to qualify for protection. *See id.* (emphasis added). Originality has two distinct requirements: (1) that the work was independently created by the author as opposed to being copied from other works; and (2) that it possesses at least some degree of creativity. *See Feist Publ'ns*, 499 U.S. at 369 (discussing the originality requirements). Originality requires more than mechanical or routine works that require no creativity. *See id.* at 379. A work that contains only non-copyrightable facts or ideas can only be copyrighted if the arrangement of those facts or ideas contains an original selection or arrangement. *See id.* at 348.

In this case, the weight to be afforded the registration is in the discretion of the Court.[3] The Defendant asks the Court to lend no weight to the registration because before Plaintiff ever registered its claimed copyright; several home builders were using and publishing floor plans similar to those contained in the Westminster. (See Ex. C.) Thus, it is by no means clear that the floor plans for the Westminster were original to the Plaintiff. As Plaintiff has the burden to prove that it has a valid copyright, the Defendant asks the Court to find against Plaintiff as a matter of law.

---

[3] Defendant reiterates the fact the Plaintiff did not register its claimed copyright for more than eleven (11) years after its first publication and more that thirteen (13) years after its claimed creation. Thus, the registration does not serve as prima facie evidence of copyright validity.

7

Moreover, even if the Court lends weight to the registration that does not mean that every aspect of Plaintiff's work is protected. It is only original works that are protected under the copyright laws. The crux of the Plaintiff's claim here is that the arrangement of rooms in the Westminster's floor plan has been copied.[4] Canterbury contends that the basic arrangement of different rooms depicted in both the Plaintiff's and Defendant's designs are substantially the same for every builder of homes in Flagler County, and have been for many years. (See Ex. C). In light of the fact that the basic arrangement of rooms has been used by many builders for a number of years, and the fact that Plaintiff waited for more than eleven years to register is copyright after it claims it originally created this arrangement of rooms, the Court should find as a matter of law that Plaintiff cannot establish a prima facie case that its arrangement of rooms is an original work of authorship protected by copyright laws.

b. The Aspects of Plaintiff's Design that it Claims were Copied are Ideas or Functional Aspects that are not Protected by Copyright Law

The issue here is whether the aspects of the Westminster floor plans that Plaintiff claims were copied are validly protected under copyright law. The mere fact that a copyright has been registered does not mean that every aspect of that work is protected. *See Feist Publ'ns*, 499 U.S. at 348. Copyright law does not protect ideas or other non-expressive elements of a work. *See* 17 U.S.C. § 102(b). In deciding whether a defendant has copied protected expression, courts use the "abstractions test." *See Haddad v. Random House Books*, 1997 U.S. Dist. LEXIS 11225, 6-7 (S.D. Fla. 1997) (citing *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)). This requires the

---

[4] The Plaintiff states that its claim is about more than simply the placement of rooms in its home, but then goes on to argue that the two designs are similar because of the location of rooms. (See Pl. Opp. Memo 7-11).

8

Court to separate the protected expression from the underlying idea and the general elements of that idea. *See Nichols*, 45 F.2d at 121-22. No infringement results if a subsequent author copies all the general elements but expresses them in a different form. *See id.* at 122-23. In addition, not all copying of specific elements is deemed to be the copying of expression. *See generally id.* (discussing the plays at issue in the case). Non-original elements are not protected and neither are elements that necessarily flow from the unprotected ideas.[5] *See generally id.* (discussing the plays at issue in the case). Finally, sometimes an idea can only be expressed in only a few ways and to the extent that the idea constrains its expression, the expression is unprotected. *See generally Yankee Candle v. Bridgewater Candle*, 259 F.3d 25 (1st Cir. 2001) (case discussing this rule as "the merger doctrine"). The Eleventh Circuit has upheld District Court rulings which found that the variety of ways in which the rooms of a home can be divided in a floor plan are finite. *See Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1993).

In this case, the Court should find that the aspects of Plaintiff's floor plan that it claims were copied are not protected by copyright law. To begin with, the bulk of Plaintiff claim is that infringement has occurred because Canterbury has placed the rooms in the Kensington floor plans in substantially the same place as the rooms are placed in the Westminster. (See Def. Dep. 27-53; Pl. Opp. Memo 7-11.) Courts have recognized that there are very few ways in which to arrange rooms in a home. Further, those options are even more limited by the fact that a reasonable buyer would not want to buy a home with rooms in fairly odd places. As a result, the idea of separating these types of rooms

---

[5] *See also* STEPHEN M. MCJOHN, EXAMPLES & EXPLANATIONS: INTELLECTUAL PROPERTY 32-33 (2003). Professor McJohn discusses these principals and as an factual example states: "If a play is set among immigrants in New York in the early 1900s, that setting largely determines such elements as dress, manners of speaking, elements of scenery, and so on." *Id.* at 33. It is these types of specific elements that follow from unprotected ideas that cannot be protected under copyright laws. *See id.*

to achieve these goals inside of a rectangle can only be achieved in a few ways. There is little way to express that idea differently other than to have different square footage, window placement, etc.[6] Therefore, because of the limited ways in which the idea of arranging square rooms, inside a rectangle home, while catering to buyer demand and lot size, can be expressed, the Defendant asks the Court to find as a matter of law that the idea is merged into the expression. The Court should look to the design as a whole, and hold, as other courts have, that when it comes to architectural plans, modest dissimilarities are more significant than in other works. *See Howard*, 974 F.2d at 1276.

### B. EVEN ASSUMING PLAINTIFF CAN DEMONSTRATE A VALID COPYRIGHT, DEFENDANT ASKS THE COURT TO RULE THAT PLAINTIFF CANNOT SHOW COPYING OF ANY OF THE PROTECTED ELEMENTS BY DEFENDANT

After a plaintiff establishes that it is the legitimate owner of a valid copyright, the plaintiff is still required to prove that the defendant has copied protected elements of the plaintiff's work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Copying must be proved by showing: (1) that defendant had access to the allegedly infringed material; and (2) the defendant actually copied protected work of the plaintiff. *See Arthur Rutenberg Corp. v. Parrino*, 664 F. Supp. 479, 481 (M.D. Fla. 1987); *John Alden Homes v. Kangas*, 142 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2001). Courts have allowed the plaintiff to establish a rebuttable presumption of copying by meeting a two part test: (1) plaintiff must show that defendant had access to plaintiff's work; and (2) that the defendant's work is substantially similar to the protected elements

---

[6] As will be shown in the next section, Defendant's design has these dissimilarities and more from Plaintiff's design. It is because of this exact problem that the courts examine such differences when determining if substantial similarity exists between floor plans. *See* John Alden Homes v. Kangas, 142 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2001).

10

of plaintiff's copyrighted expression. *See Kangas*, 142 F. Supp. 2d at 1344. This showing may then be rebutted by the defendant with evidence of independent creation. *See Parrino*, 664 F. Supp. at 481.

### i.     Plaintiff cannot Establish Substantial Similarity as a Matter of Law

The issue here is whether Plaintiff can prove that Defendant actually copied Plaintiff's design as to constitute a prima facie case of copyright infringement. The Plaintiff must be able to show that the Defendant actually copied protected expression of the Plaintiff. *See Parrino*, 664 F. Supp. at 481; *Kangas*, 142 F. Supp. 2d at 1344-45. This can be proven by showing substantial similarity between the plaintiff's copyrighted expression and the defendant's expression. *See Kangas*, 142 F. Supp. 2d at 1344-45. Substantial similarity only exists where a lay observer would recognize the alleged copy as an appropriation of the *protected* aspects of a plaintiff's work. *See id.* (emphasis added). An average lay observer is an individual who has no vested interest in the governing issue and is sufficiently informed and alert on that issue to precisely identify differences in the competing designs as well as fairly identify similarities. *See id.* In cases involving home designs and floor plans, a court can find the floor plans are visually similar with the same type of general layout and nevertheless find their dissimilarities significant. *See Kangas*, 142 F. Supp. 2d at 1344-45 (citing *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1993)). In such cases, the court recognizes the variety of ways in which to arrange rooms in a home is inherently limited. *See id.* Thus, in architectural plans, modest dissimilarities hold greater significance than in other types of works. *See id.*

The only issue here is whether, as a matter of law, Plaintiff can show substantial

11

similarity between protected elements of its design and those of Defendant's design. The Court should find as a matter of law that these two designs are not substantially similar. To begin with, the only similarity between Plaintiff's design and Defendant's design is the general placement of rooms. What is more, there are significant dissimilarities, as well as many modest ones, which clearly show that these designs are not substantially similar.

First, the square footage of the rooms are different. (Compare Exhibit A and Exhibit B.) Second, a room by room comparison shows many differences. Starting with the garage, the Plaintiff's design has a front entrance while Defendant's design has a side entrance. In addition, looking at the designs from the respective garage entrances, Plaintiff's design has the air conditioning (A/C) unit near the back center of the garage and the water heater in the back, northwest corner with a large separation between the two. Defendant's design has the A/C unit in the southwest corner with the water heater directly next to it. Also, Defendant's design has two windows in the garage while Plaintiff's has none. Finally, Plaintiff's design has an attic access while Defendant's has none due to a second floor on top of the garage; a feature which Plaintiff's design lacks entirely.

Moving on to the utility room, both Plaintiff and Defendant's design have entries from the garage and house in the same general area. However, note that Plaintiff's design has two inward opening doors, while Defendant has one that opens inside and one that opens outside. The Court should note also that to the left of the utility room in Plaintiff's design, there is a bedroom closet, while in Defendant's design there is a hallway.

Looking next at the bedrooms on the west side of both designs, Bedroom 2 in Plaintiff's design is completely different from Bedroom 3 in Defendant's design.[7] The Plaintiff's design has a rectangular shape which, lengthwise, goes longer from left to right with an entrance coming directly from the hallway and a closet on the far right hand side. On the other hand, Defendant's design has a different shape and size which is closer to a square with a right-hand entrance from the hallway and the closet at the top of the room. Additionally, the Court should note that the doors swing in opposite directions: Plaintiff's to the left; Defendant's to the right. Finally, note that the windows are in slightly different places.

Moving to Plaintiff's Bedroom 3 and Defendant's Bedroom 2, the shape of the rooms are different as Defendant's is more of a rectangular shape while Plaintiff's is more of a square. More strikingly, Defendant's design has a ninety degree, right-hand entrance while Plaintiff's is a forty-five degree angle. Beyond Plaintiff's entrance is an angled wall, on the other side of which is a long closet that occupies the rest of the bedroom's north wall. Quite differently, Defendant's design opens flush against the ninety degree angle wall, and only a small portion of the northwest corner is used for a small bedroom closet. Furthermore, note that the windows are in different locations. Finally, note that opposite the bedroom closet in Bedroom 3 in Plaintiff's design is a mirror image closet, while in Defendant's design, the closets are on opposite ends.[8]

Upon study of the hallway bathroom, the Court should note that the sizes of the

---

[7] Please note that in Defendant's design, there is a typo in that there are two bedrooms which are labeled "Bedroom 3." The reader may determine which "Bedroom 3" I am referring to by which bedroom in Plaintiff's design that I compare it with since both are in the same general location.

[8] In comparison between Bedroom 4 in Plaintiff's design and Bedroom 3 in Defendant's design, the same dissimilarities exist as described in the previous paragraph. *See supra* note 7.

two rooms are different. In Plaintiff's design, the right side wall of the bathroom is perfectly aligned with the end of the hallway wall to the south. In Defendant's design, the bathroom's right side wall extends further east beyond the end of the hallway wall to the south. Furthermore, the bathtubs face opposite ways in the two designs. Also, the bathroom sink counter space in Defendant's design is much smaller than in Plaintiff's and Defendant's sink is oval shaped whereas Plaintiff's is round. Finally, no weight should be given to the fact the bathroom door leading to the outside swing in the same direction on both designs since this is required under the fire codes. (Def. Dep. 35.)

Switching to the center area of the floor plans, note that the Family Rooms in the two designs are of different sizes, which also means that the window placement in each design is different. Additionally, the Nooks in the two designs are significantly different. Plaintiff's Nook feeds into a ninety degree angle adjacent to the Porch and has windows looking both to the outside and to the Porch. On the other hand, Defendant's design is rounded into the porch and is completely made of glass. There is no window to the outside or into the Covered Patio. Moreover, the entrance from the Nook into the Living Room in Plaintiff's design has an elongated wall which travels much further into the Living Room than in Defendant's design, and also fails to break inward at a ninety degree angle like in Defendant's design. As to the Dining Rooms and Living Rooms, the square footage of these rooms is different as is their shape due to the fact that the Nooks and Foyers in each design are of different shapes.

Turning to the Kitchens, the Court should note that the wall placements in the southeast corner of the kitchens are significantly different. Defendant's design pushes this wall further into the Living Room and pushes the kitchen counter much further north

14

than in Plaintiff's design. This allows Defendant's design to have a much larger Pantry than Plaintff's design. What is more, Plaintiff's design has a retractable door on its Pantry which opens at a ninety degree angle while Defendant's has a solid door which opens at a forty-five degree angle. Additionally, note that Defendant's kitchen counter is much thinner and longer than Plaintiff's which places the dishwasher in a different location. Finally, the Court should note the significant differences in the fact that Defendant's Kitchen has an Island as well as an entrance to a hallway running down the left side of the Utility Room while Plaintiff's design has none of these features.

Lastly, an examination of the rooms on the far right side of the home reveals several significant differences. First, the Court should note that the Foyers are different sizes and that, in addition, Plaintiff's front entrance has one solid door with windows on either side while Defendant's front entrance has a pair of glass French Doors. As to the Master Bedroom and the Master Bath, first the Court should note that the rooms here are different sizes. Additionally, the Master Bedroom in Defendant's design contains glass French Doors on the far left side of the back wall, which open into a Covered Patio. Plaintiff's design simply has a sliding glass door in the center of the back wall which opens to an uncovered Porch. Note also that the windows are in different places due to the difference in the room sizes. Finally, in the Master Bath, the doors to the walk-in-closets in Defendant's design are solid and open in different directions than those of Plaintiff's design, which uses a retractable door. Also, the placement of sinks in the bathrooms is different as Plaintiff's are as far south on the counter as possible while Defendant's are centered.[9]

---

[9] Defendant would also point out that the elevations of the two homes are different. (Compare Ex. D & E.) Finally, photographic comparisons of the two homes clearly show that they are significantly different.

15

To summarize, the only similarity between these two designs is the placement of rooms, which is either not copyrightable expression, or is entitled to little weight when dealing with architectural plans. There are numerous significant differences between the two designs, as well as infinite modest ones which count significantly in this type of case. Thus, the Defendant asks the Court to find as a matter of law that these two home designs are not substantially similar since a reasonably informed, neutral observer could not find that these two designs are substantially similar.

### C. EVEN IF PLAINTIFF COULD PROVE COPYRIGHT INFRINGMENT, THE DEFENDANT WOULD ASK THE COURT TO FIND AS A MATTER OF LAW THAT PLAINTIFF'S REQUEST FOR EQUITABLE RELIEF IS BARRED BY LACHES

The Eleventh Circuit has held that to establish laches, a defendant must demonstrate 1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986).

In this case, the parties do not dispute that one of Defendant's principals, Mr. Heron, was previously involved in business with the Plaintiff. Mr. Heron's affidavit has confirmed the fact that the Defendant continued to have contact with officers and employees of the Plaintiff even after Mr. Heron stopped his business dealings with the Plaintiff. Certain officers and employees of the Plaintiff had been out to the building site of the Kensington model while the construction was occurring and inspected the plans. This occurred in 2002, over three years prior to the filing of this lawsuit. These officers or employees had discussions with the Defendant's principals about the Kensington and

---

(Compare Ex. A& B.)

its floor plans, as well as the floor plans of the Westminster.[10] In addition, the Kensington Floor Plan was published in trade magazines that also contained the Westminster as early as 2002. Thus, the Plaintiff knew or should have known about any potential infringement claim in 2002. That being the case, there is no excuse as to why the Plaintiff has waited more than three years to bring its copyright infringement claim. Thus, the Defendant would ask the Court to find as a matter of law that Plaintiff's claim is barred by laches.

### D.   IN ANY EVENT, PLAINTIFF IS NOT ENTITLED TO RECEIVE EITHER STATUTORY DAMAGES OR ATTORNEY'S FEES AND COSTS UNDER CHAPTER 17, UNITED STATES CODE.

Assuming Plaintiff could prove actionable infringement by Defendant, the issue would then become what, if anything, is Plaintiff entitled to recover. Generally, a copyright infringer can be liable for either actual damages, or for statutory damages as provided in 17 U.S.C. § 504(c), and the Court may award reasonable attorney's fees under 17 U.S.C. § 505. *See* 17 U.S.C. § 504(a); 17 U.S.C. § 505. Nevertheless, there are limitations on these provisions depending on when the Plaintiff filed for their copyright registration and when it filed its lawsuit. *See* 17 U.S.C. § 412. Because of Plaintiff's failure to register its copyright in a timely manner it is not entitled to either statutory damages or attorney's fees and must strictly prove actual damages.

---

[10] Plaintiff has attempted to argue that any testimony by Defendant on this matter is hearsay. While Defendant reserves its right to make whatever arguments it may choose should the issue arise at trial, Defendant would take the time to point out that such statements are often admitted over objection as admissions by a party opponent.

### i.     Because Plaintiff Failed to Comply with Section 412, Plaintiff is not Entitled to Recover Statutory Damages or Attorney's Fees

Section 412 of Chapter 17, United States Code, states specifically that "[i]n any action under this title, *other than* . . . an action for infringement of the copyright of a work that has been pre-registered under section 408(f) *before* the commencement of the infringement *and* that has an effective date of registration *not later than the earlier of* 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, . . . *no award of statutory damages or of attorney's fees* . . . *shall be made for –* . . . (2) any infringement of copyright commenced *after first publication* of the work *and before the effective date of its registration*, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412 (emphasis added).

In this case, Plaintiff, by its own admissions in its complaint, has clearly stated that the first publication of the Westminster was in June of 1994. Nevertheless, Plaintiff never registered the copyright until October of 2005 – just weeks before instituting this action. Defendant has only been in business since 2002 and Plaintiff claims the infringing activity occurred between then and 2005. Thus, Plaintiff has not pre-registered its copyright before the alleged infringement occurred, and the earlier of the two specified periods in Plaintiff's case was three months from the date of first publication. Therefore, Plaintiff has no right to statutory damages or attorney's fees for any infringing activity that occurred after the first publication of the Westminster in June 1994 and before the effective date of its registration in October of 2005.

### ii. Because Plaintiff is not Entitled to Statutory Damages, Plaintiff must Provide Strict Proof of its Actual Damages

The issue here is whether Plaintiff can prove actual damages from any infringing action by Defendant. The usual measure of actual damages is injury to the market value of the infringed work. *See Kent v. Revere*, 1985 U.S. Dist. LEXIS 14507, 22-23 (M.D. Fla. 1985). Market value is what a willing buyer would have been reasonably required to pay a willing seller for the plaintiff's protected work. *See Home Design Servs. v. A-Plus Homes, Inc.*, 2004 U.S. Dist. LEXIS 29044 (M.D. Fla. 2004). Courts will typically allow a plaintiff to prove this through clear, non-speculative evidence of the profits that the plaintiff would have made had it not been for the infringement. *See Kent*, 1985 U.S. Dist. LEXIS 14507 at 22-23. The plaintiff must prove a casual connection between any of its actual damages and the defendant's infringing activity. *See A-Plus Homes, Inc.*, 2004 U.S. Dist. LEXIS 29044. The other component of actual damages involves the plaintiff proving the defendant's actual profits. *See Kent*, 1985 U.S. Dist. LEXIS 14507 at 22-23. The copyright owner must present proof of the infringer's gross revenue. *See Home Design Servs. v. Hibiscus Homes of Fla., Inc.*, 2005 U.S. Dist. LEXIS 32788, 16-18 (M.D. Fla. 2005). After the plaintiff produces evidence of these two elements of actual damages, that amount is then reduced by defendant's proof of deductible expenses and portions of profits attributable to factors other than infringement of copyrighted plans. *See id.*

In this case, Defendant contends that Plaintiff can bring forth no proof at all beyond mere speculation to show any profits it has lost as a result of Defendant's conduct or that Defendant has made any profits that were due to the Westminster plans.

## CONCLUSION

WHEREFORE, for the reasons stated above the Defendant, CANTERBURY ESTATE HOMES, INC., requests this honorable Court to grant Judgment in Defendant's favor and against Plaintiff.

Dated: February 14, 2007

                                              Respectfully submitted,

                                              By:    s/Sidney M. Nowell
                                              SIDNEY M. NOWELL, ESQ.
                                              Florida Bar No.: 0141593
                                              Nowell & Associates, P.A.
                                              P.O. Box 819
                                              1100 E. Moody Blvd.
                                              Bunnell, FL  32110
                                              Telephone:  386-437-1668
                                              Facsimile:   386-586-4014
                                              attorneynowell@bellsouth.net
                                              Attorney for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that on February 14, 2007, I electronically filed the foregoing with the Clerk of Court by the CM/ECF system and that a true and correct copy of the foregoing was served by U.S. Mail this 14th day of February, to:

Jon M. Gibbs, Esq.
Ackerman Senterfitt
Post Office Box 231
420 South Orange Avenue, Suite 1200
Orlando, Florida 32802-0231

                                              s/Sidney M. Nowell
                                              SIDNEY M. NOWELL, ESQ.